**E-FILED**
Tuesday, 08 November, 2005  09:59:30 AM
Clerk, U.S. District Court, ILCD

# IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS
### SPRINGFIELD DIVISION

| | | |
|---|---|---|
| ROLAND STAMPS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No.  04-3085 |
| | ) | |
| COMPASS GROUP, USA, | ) | |
| d/b/a/ CHARTWELLS, | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION

JEANNE E. SCOTT, U.S. District Judge:

This matter comes before the Court on Defendant Compass Group,
U.S.A.'s, d/b/a Chartwells (Compass), Motion for Summary Judgment (d/e
22).  Plaintiff Roland Stamps alleges that Compass discriminated against
him because of his race and sex in violation of Title VII of the Civil Rights
Act of 1964, 42 USC § 2000e et seq.  For the reasons set forth below, the
Motion is allowed.

## STATEMENT OF FACTS

Stamps is an African-American man.  Compass operates food service
facilities at various college campuses across the country.  Compass operated

1

the Cummings Dining Hall at Illinois College in Jacksonville, Illinois.  On or about September 1, 2000, Stamps became the Production Manager at Cummings.  As the Production Manager, Stamps managed the kitchen.  Sue Ballenger was the baker at Cummings.  She is Caucasian.  She was responsible for preparing all desserts.  She reported directly to Stamps.

According to Stamps, in April 2001, Ballenger gave him a massage while he was on his break.  Defendant Compass Group U.S.A.'s Memorandum in Support of its Motion for Summary Judgment (d/e 23) (Defendant's Memorandum), Exhibit A, Excerpts of the Deposition of Roland Stamps (Stamps Deposition) at 61-63.  She was standing behind him while he was seated in a chair.  Stamps stated in his deposition that she massaged his shoulders for about ten minutes and then she leaned over, putting her breasts against the back of his head, and began massaging his chest.  Id. at 62.  According to Stamps, the incident ended when Stamps told Ballenger he had to go.

Stamps states that in June 2001, Ballenger brought a long black dress to Cummings to show to co-worker Margaret Little.  Little is the Administrative Assistant at Cummings and a friend of Ballenger.  Ballenger was not working at the time because she did not work during the summer.

When Ballenger arrived, she put the dress on in the bathroom.  Stamps states that when Ballenger came out of the bathroom, she asked Stamps to zip up the dress.  Id. at 63.  After she showed the dress to Little, she asked Stamps to unzip the dress.  Stamps states that Ballenger backed up and rubbed her buttocks against him both when he zipped and unzipped the dress.  Id. at 63-64.

Stamps states that on his birthday, September 5, 2001, he was seated at work performing some paper work.  He states that Ballenger came up to him, gave him a hug, and reached down and rubbed his penis through his trousers, and said happy birthday.  Id. at 66.  Stamps states that he rubbed Ballenger on the back.  Id., at 66-67.  A few minutes after the incident, Stamps told his supervisor, Matthew Kent, about it.  Id. at 73.  Kent did not admonish Stamps for the incident.  Id.

Stamps states that on Boss' Day in October 2001, Ballenger walked up to Stamps and asked what he wanted for the day.  She then reached under his apron, and began rubbing his penis.  Stamps states that he and Ballenger went behind a wall in the coat room.  Stamps states that she unzipped his trousers and rubbed his penis while he fondled her breasts.  He states that this continued until he ejaculated.  Id. at 67-68.

3

On March 1, 2002, Stamps met with Ballenger to discuss Ballenger's attendance problems. Ballenger had significant attendance problems. She had several unexcused absences both before and after Stamps became the Production Manager. At the meeting, Stamps gave Ballenger a written discipline report called Associate Counseling Report (ACR). This was part of Compass' formal method of progressive discipline for employees. The ACR noted that from January 1, 2002, until March 1, 2002, Ballenger had missed 20 of 33 working days. Id. at 71.

Stamps states that after he delivered the ACR, Ballenger asked him if he wanted to play. Stamps states that he and Ballenger walked around the wall in the coat room. Stamps states that Ballenger then unzipped his trousers and exposed her breasts. Stamps states that she began rubbing his penis while he fondled her breasts. Stamps states that he ended this encounter because he was nervous. Id. at 71-72. Stamps told Kent shortly thereafter that Ballenger tried to get friendly again, but he backed off. Id. at 96-97.

In March 2002, Ballenger told her friend Margaret Little that Stamps was harassing her. Ballenger told Little that Stamps touched her inappropriately and said things that upset her. She told Little that Stamps

grabbed her hand and forced it onto his penis while he ejaculated.  She told Little that Stamps grabbed her breasts on occasion and made lewd comments to her at other times.  Little agreed not to report the matter, but told Ballenger to tell Kent.  Defendant's Memorandum, Exhibit I, Excerpts of the Deposition of Margaret Little (Little Deposition) at 16-18.

In April 2002, Ballenger, Little and Ballenger's minister Jay Cooke, met with Kent.  At this meeting, Ballenger told Kent that Stamps was harassing her.  There is some dispute about what she said at the meeting. Kent got the impression that the initial contacts between Stamps and Ballenger had been consensual, but now, his advances were unwelcome. Defendant's Memorandum, Exhibit D, Excerpts of the Deposition of Matthew Kent (Kent Deposition) at 21, 32.  According to Little and Ballenger, Ballenger told Kent that none of the encounters had been consensual. Little Deposition at 20-21; Defendant's Memorandum, Exhibit C, Excerpts of the Deposition of Sue Ballenger (Ballenger Deposition) at 37. Ballenger stated that she had been missing work to avoid Stamps' harassment.  Kent Deposition at 24.  After this meeting, Kent told Stamps to leave Ballenger alone, but he took no further action.  Id. at 28-29.

On October 15, 2002, Kent and Stamps provided Ballenger with a

second ACR.   This report noted that Ballenger had missed four of the previous fourteen days at work.   Three days later, on October 18, 2002, Kent and Stamps gave Ballenger a third ACR.   This report noted that she only worked two hours since receiving the last ACR on October 15, 2004. On November 13, 2002, Kent prepared a final ACR which recommended Ballenger's discharge.   This ACR was never given to Ballenger.

On November 19, 2002, Ballenger's mother-in-law called Kent to complain that Stamps was harassing Ballenger.   Later that day, Ballenger telephoned Compass' Field Human Resource Manager Rob Burn.   She told Burn that Stamps was sexually harassing her and, in particular, touching her inappropriately.   Burn reported this to Compass' regional Vice President Richard Weigel.

Weigel and Burn traveled to Illinois College to investigate Ballenger's claims.    The on-site investigation lasted one day.    Defendant's Memorandum, Exhibit J, Excerpts of the Deposition of Robert H. Burn (Burn Deposition) at 24.  Burn interviewed Ballenger, Stamps, Little, and Kent.  Ballenger denied that she engaged in any consensual sexual conduct with Stamps.  She claimed that Stamps was harassing her.  She recounted her versions of the harassing incidents.  Burn Deposition at 24, 29-36.

6

Stamps told Burn about his encounters with Ballenger, from the April 2001, massage through the sexual encounters at work in September 2001, October 2001, and March 2002. <u>Stamps Deposition</u> at 61-68. Stamps stated that the encounters were consensual. He showed Burn the semen stain that was left on the carpet after the October 2001, incident. <u>Id.</u> at 68.

Based on his investigation, Burn prepared a memorandum containing his report and recommendation to Weigel, dated November 21, 2002. <u>Defendant's Memorandum</u>, Exhibit K. Burn recommended that Stamps be terminated for engaging in sexual activity during working hours at the workplace. <u>Id.</u> at 3. Compass had policies that prohibited fraternization between employees. <u>Burn Deposition</u> at 101-06. Compass' employee handbooks for both supervisors, such as Stamps, and line employees, such as Ballenger, provided that indecent activity at the workplace was considered a serious offense that would normally result in immediate dismissal. <u>Plaintiff's Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment (d/e 26)</u>, Exhibits 4 and 6.

Burn recommended that Ballenger be restored to her position and that she be given credit for days that she took off while she was trying to avoid Stamps. Burn did not conclude in his recommendation to Weigel that

7

Stamps had sexually harassed Ballenger.  In his deposition, however, he stated that he found Ballenger to be more credible than Stamps.  <u>Burn Deposition</u> at 94-95.  Weigel adopted Burn's recommendation; he discharged Stamps and reinstated Ballenger with credit for days that she had missed in 2002.

Stamps has submitted evidence that Kent had a sexual relationship with Christina Dawson, the Assistant Director of Dining services at Cummings, but was never disciplined.  Kent is a Caucasian man.  Kent admits that he had a sexual relationship with Dawson, but states that he never engaged in any sexual conduct at the workplace.  Stamps states in his Memorandum that another Caucasian supervisor, Brian Hicks, was given a three-day suspension for sexual harassment, but was later reinstated and paid for the three days.  <u>Plaintiff's Memorandum</u> at 102.  Stamps, however, had no personal knowledge regarding the claims of sexual harassment against Hicks.  <u>Defendant Compass Group U.S.A.'s Memorandum in Reply to Plaintiff's Opposition to Defendant's Motion for Summary Judgment (d/e 28)</u> at 10, Exhibit C, <u>Excerpts of Deposition of Roland Stamps</u> at 53-55.

## ANALYSIS

Stamps claims that he was fired from his job because of his race and sex.  Compass asks for summary judgment on both claims.  At summary judgment, Compass must present evidence that demonstrates the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986).  The Court must consider the evidence presented in the light most favorable to Stamps.  Any doubt as to the existence of a genuine issue for trial is resolved against Compass.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).  Once Compass has produced evidence showing that it is entitled to summary judgment, Stamps must present evidence to show that issues of fact remain.  Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In this case, Stamps has failed to establish that issues of fact exist regarding his claim of race and sex discrimination.

Stamps may present evidence of sexual discrimination and racial discrimination through either the indirect or direct method of proof.  Stamps does not attempt to present direct evidence.  He relies on the indirect method of proof.  Under the indirect method of proof, he must present evidence of a prima facie case that: (1) he is a member protected

9

class; (2) he was meeting his employer's legitimate expectations; (3) he suffered an adverse employment action; and (4) similarly-situated individuals outside of the protected class were treated more favorably than he. Hildebrandt v. Illinois Dept. of Natural Resources, 347 F.3d 1014, 1030 (7th Cir. 2003).

Stamps cannot make out a prima facie case because he was not meeting his employer's legitimate expectations. Compass had clear rules that indecent activity at work was a serious offense that would normally result in immediate dismissal. Stamps was a manager and he knowingly engaged in sex acts with a subordinate employee at the workplace while on duty. He violated Compass' rules and, thus, failed to meet his employer's legitimate expectations. He cannot prove the second element of his prima facie case.

Moreover, Stamps has not presented evidence of a similarly-situated person that was treated more favorably. Employees are similarly-situated if they are comparable in all material respects. "A court must look at all relevant factors, the number of which depends on the context." Such factors include whether employees "dealt with the same supervisor" and were "subject to the same standards." Patterson v. Avery Dennison Corp., 281

F.3d 676, 680 (7th Cir. 2002), quoting Radue v. Kimberly-Clark Corp., 219

F.3d 612, 618 (7th Cir. 2000) (internal citations omitted).

Stamps argues that Ballenger was similarly-situated because he claims

that Ballenger also engaged in sex acts at work.  He and Ballenger are not

similarly-situated.  He is a supervisor; she was not; he reported to Kent; she

reported to him.  A supervisor can be held to higher standards and can be

treated differently.  See Sarsha v. Sears, Roebuck & Co., 3 F.3d 1035, 1042

(7th Cir. 1993) (Male supervisor who was fired for dating female subordinate

was not similarly-situated with the female subordinate he was dating).

Ballenger, thus, is not similarly-situated.

Stamps also points to Kent as a similarly-situated supervisor because

he had a sexual relationship with a co-worker, but was not disciplined.  Kent

did not engage in sexual conduct at work while on duty.  He is not similarly-

situated.  Stamps also points to Hicks.  Stamps has no personal knowledge

of Hicks' situation and has presented no competent evidence concerning

Hicks.  See Fed. R. Civ. P. 56(e).  Also, Stamps does not claim that Hicks

engaged in sexual acts at work while on duty.  Stamps therefore has failed

to present sufficient evidence to make out a prima facie case of

discrimination.  Compass is entitled to summary judgment.

THEREFORE, Defendant's Motion for Summary Judgment (d/e 22) is ALLOWED.   Summary judgment is entered in favor of Defendant Compass Group, U.S.A. d/b/a Chartwells and against Plaintiff Roland Stamps.  All pending motions are denied as moot.  This case is closed.

IT IS THEREFORE SO ORDERED.

ENTER:   November 7, 2005.

FOR THE COURT:

s/  Jeanne E. Scott
JEANNE E. SCOTT
UNITED STATES DISTRICT JUDGE